UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JOHN E. HENDERSON, II, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 08-CV-2086 |
| ) | |
| W. PATRICK HARTSHORN, in his ) | |
| official capacity as Sheriff of Vermilion ) | |
| County, Illinois, and Vermilion County ) | |
| Correctional Officers KEVIN MASKEL, ) | |
| HERBERT R. POWELL, COLIN D. ) | |
| OSTERBUR, and SCOTT CRAWLEY, ) | |
| in their individual and official capacities, ) | |
| jointly and severally, ) | |
| ) | |
| Defendants. ) | |

**OPINION**

On April 8, 2008, Plaintiff John E. Henderson, II, filed a Complaint (#1) against Defendants W. Patrick Hartshorn, Kevin Maskel, Herbert R. Powell, Colin D. Osterbur, and Scott Crawley alleging violations of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, as well as pendent state law claims of battery, assault, malicious prosecution, and civil conspiracy. Defendants filed their Motion for Partial Summary Judgment (#23) on February 1, 2010, with Plaintiff filing his Response (#27) on February 25, 2010. Defendant's Reply (#29) was filed on March 15, 2010, and the case is ready for judgment. On April 28, 2010, this court granted a motion to stay filed by Defendants. With the agreement of the parties and for the purpose of this summary judgment motion, the court lifts the stay. For the following reasons, Defendants' Motion for Partial Summary Judgment (#23) is GRANTED in part and DENIED in part.

# FACTS[1]

On April 8, 2007, Plaintiff was incarcerated at the Vermilion County Jail serving a 60-day sentence after pleading guilty to driving on a suspended license. On that day Plaintiff was given a food tray by an officer but requested a special tray because he did not want to eat meat. After he was told that he would not get a special tray, Plaintiff requested to speak to the sergeant on duty. Speaking with Plaintiff through an intercom, Defendant Maskel told Plaintiff that he would not get a special tray, to which Plaintiff responded by saying "fuck you." Vermilion County jail rules forbid inmates from showing disrespect to officers. When a correctional officer feels that an inmate has shown him disrespect, it is up to the officer to determine if that disrespect may lead other inmates to believe they could also disrespect officers.

According to Defendant Maskel, when an inmate shows disrespect, he is moved or brought out of the housing unit to discuss the problem. Maskel believed that Plaintiff's use of "fuck you" was a show of disrespect. Maskel, Powell, Osterbur, and Crawley then went to Plaintiff's housing unit. Maskel testified that the other officers accompanied him for safety. Maskel claims he intended on speaking with Plaintiff in an effort to explain why Plaintiff did not get a special tray. Maskel was then going to place Plaintiff in an isolation cell for "officer disrespect." While the officers were in Plaintiff's housing unit, there was a physical incident between Plaintiff and the officers at the table where Plaintiff was sitting. One of the officers grabbed Plaintiff by the arm, and Maskel grabbed Plaintiff around the neck in order to bend him over the table to be cuffed. Plaintiff got one of his

---

[1] At all relevant times, Defendant Patrick Hartshorn was the duly elected and acting Sheriff of Vermilion County and was in charge of the Vermilion County Jail. At all relevant times Defendants Kevin Maskel, Herbert Powell, Colin Osterbur, and Scott Crawley were employed as correctional officers within the Vermilion County Sheriff's Department.

hands loose from an officer's grasp and pushed Maskel's hand away from his neck. Maskel claims Plaintiff bit his finger and called out "he just bit me." Plaintiff testified that Maskel then punched him once or twice in the face. Plaintiff testified that the other officers then threw him to the ground. Plaintiff landed on his stomach. Plaintiff was then handcuffed. Defendants Powell, Osterbur, and Crawley did not strike Plaintiff during the incident.

While Plaintiff was on the ground, Maskel walked around the table and attempted to strike Plaintiff in the chest area with his knee, but instead came down on Plaintiff's jaw (Plaintiff claims he was face down at this time, showing that Maskel intended to hit him in the jaw). Plaintiff's jaw was broken and he lost two or three teeth as a result of the incident. After the incident, Plaintiff claims Defendants dragged him out of his cell, down the hall, and into an elevator and eventually placed him in an isolated cell.

Plaintiff filed as an exhibit a video recording taken at the jail of the incident from April 8, 2007. The video, which does not have audio, shows the incident from the time before the officers engage Plaintiff up to the time Plaintiff was being dragged to the elevator. The video begins with Plaintiff seated in what looks like a common area, with other inmates sitting at the table with him or milling about the room. Four officers then enter. One goes to grab Plaintiff's arm, and Plaintiff pulls away. Plaintiff stands up as the officers surround Plaintiff, with one of the officers appearing to give Plaintiff verbal directions. One of the officers then grabs Plaintiff's hands and places them behind his back. Another officer places his arm around Plaintiff's neck and the officers try to bring Plaintiff down to the table. Plaintiff is struggling and appearing to resist the officers. As the officers continue to struggle with Plaintiff one officer (Maskel, most likely) can be seen to punch Plaintiff in the head twice. Plaintiff is then hauled to the ground by the officers and continues to apparently

-3-

struggle with them. The camera's view of Plaintiff while he is on the ground is somewhat obscured by the officers and other inmates, so the incident of Maskel supposedly striking Plaintiff's jaw with his knee is not readily observable. Plaintiff is then dragged from the room by the officers. The remainder of the video shows the officers dragging Plaintiff to the elevator.

During his deposition, conducted on December 29, 2009, Defendant Hartshorn testified that there was no concrete policy at the jail on how to deal with every situation where an inmate yells at correctional officers. In most cases, officers could tell immediately who was screaming or who was "doing something they're not supposed to be doing in a cell block..." Rather, "it is up to the officer's discretion as to whether he thinks it's a serious situation and whether he thinks that it's a situation that could cause other inmates to get out of control if it was left unattended." When asked if there was any policy on how a correctional officer should respond if he feels disrespected by an inmate, Hartshorn stated that "it would be up to the correctional officer to determine if that disrespect was enough to lead other inmates to believe that they could also disrespect the officer..." If a correctional officer sees a superior officer act inappropriately, the correctional officer is required to report it to an officer of equal rank or higher in writing. If an incident is big enough, an investigator would be assigned. Hartshorn had no recollection of any incident involving Plaintiff on April 8, 2007, nor did he personally know Plaintiff. Hartshorn had no independent recollection of when he found out about the incident involving Plaintiff, but something like that would probably have been brought to his attention the next day. He does not know who brought it to his attention.

A criminal case was initiated as a result of the incident. On November 5, 2009, a Vermilion County jury found Plaintiff guilty of aggravated battery for biting Maskel during the incident. At this time, Plaintiff currently has pending before the Vermilion County Circuit Court a motion for

reconsideration of sentence. The Fourth District Appellate Court has not yet ruled on the merits of Plaintiff's case.

**ARGUMENT**

Defendants filed their Motion for Partial Summary Judgment (#23) on February 1, 2010. In their Motion, Defendants argued: (1) Plaintiff's § 1983 excessive force and state-law assault and battery claims fail as to Defendants Powell, Osterbur, and Crawley because the force used by these Defendants was *de minimis* and not intended to cause any harm to Plaintiff; (2) Plaintiff's § 1983 claim against Defendant Hartshorn fails because Vermilion County has no unconstitutional policy, practice, or custom regarding the use of force that caused Plaintiff's injury; (3) Plaintiff's state-law malicious prosecution claim fails because the criminal proceeding was not terminated in his favor and because Defendants did not institute the proceeding; and (4) Plaintiff's state-law civil conspiracy claim fails because, under the intra-corporate conspiracy doctrine, employees of a corporation cannot conspire with each other and because there is no evidence of an agreement by Defendants to violate Plaintiff's rights. Defendants did not move for summary judgment on the § 1983 and pendant state law assault and battery claims as they pertain to Defendant Maskel. Each of Defendants' arguments will be addressed in turn.

Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(b), "a party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c);

see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial.  Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Burwell v. Pekin Cmty. High Sch. Dist. 303, 213 F. Supp. 2d 917, 929 (C.D. Ill. 2002).  Speculation, however, is not the source of a reasonable inference.  See Burwell, 213 F. Supp. 2d at 929, citing Chmiel v. JC Penney Life Ins. Co., 158 F.3d 966, 968 (7th Cir. 1998).

I. § 1983 Claims Against Defendants Powell, Osterbur, and Crawley

Defendants first argue that Plaintiff improperly brought his § 1983 excessive force claims under the Fourth and Fourteenth Amendments.  The Fourth and Fourteenth Amendments' reasonableness standard applies to protect from excessive force during an arrest and pretrial detention, respectively.  However, for a prisoner who is convicted and serving a sentence, the Eighth Amendment's cruel and unusual punishment standard applies.  See Lewis v. Downey, 581 F.3d 467, 473 (7th Cir. 2009).  Here, Plaintiff had been sentenced and was serving time in the Vermilion County jail.  Therefore, the Eighth Amendment standard applies to Plaintiff,

The Eighth Amendment standard protects "individuals only from the infliction of cruel and unusual punishment, which is often defined in the prison context as the 'unnecessary and wanton infliction of pain.'"  Lewis, 581 F.3d at 473, quoting Whitley v. Albers, 475 U.S. 312, 319 (1986).  "In cases involving the claimed use of excessive force, the 'core judicial inquiry' is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically

to cause harm.'" Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001), quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992). Factors taken into consideration by the court when conducting this inquiry include: (1) the need for application of force; (2) the relationship between that need and the force applied; (3) the threat reasonably perceived by the responsible officers; (4) the efforts made to temper the severity of the force employed; and (5) the extent of the injury suffered by the prisoner. Outlaw, 259 F.3d at 837.

A plaintiff need not demonstrate a significant injury to state a claim of excessive force under the Eighth Amendment, however a claim cannot ordinarily be predicated on a *de minimis* use of physical force. Outlaw, 259 F.3d at 837-38. Rather, "the Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10. "Therefore, not every 'malevolent touch by a prison guard' gives rise to a federal cause of action, even if the use of force in question 'may later seem unnecessary in the peace of a judge's chambers.'" Outlaw, 259 F.3d at 838, quoting Hudson, 503 U.S. at 9.

In the instant case, Defendants Powell, Osterbur, and Crawley are not accused of excessive force due to striking the Plaintiff at any time. Rather, Plaintiff charges excessive force on their part for throwing Plaintiff to the ground and holding him there while Maskel broke his jaw. Plaintiff claims all of this was part of the same incident, and their actions should be treated in connection with Maskel's. However, looking at Defendants' actual actions of throwing Plaintiff to the ground and restraining him while he struggled, those actions qualify as the sort of *de minimis* use of force that the Seventh Circuit has held does not constitute cruel and unusual punishment under the Eighth

Amendment. See DeWalt v. Carter, 224 F.3d 607, 620 (7th Cir. 2000) (officers simple act of shoving prisoner constituted *de minimis* use of force and was not cruel and unusual punishment). Not every shove or push by a prison guard violates a prisoner's constitutional rights. DeWalt, 224 F.3d at 620. Here, the officers were restraining Plaintiff during a confrontation. Plaintiff alleges that all he had done was use profane language and was just sitting at a table "playing cards" when the officers "entered the room and started jerking him around and then putting him on the floor." The tape does not show that. There is no audio on the tape, so it cannot be definitively shown what words were exchanged between the officers and Plaintiff. The parties agree that neither Osterbur, Crawley, or Powell ever struck Plaintiff. They were attempting to restrain a struggling prisoner in an effort to maintain and restore discipline. There is nothing in the record or the video tape to show that Osterbur, Powell, or Crawley used excessive force so as to maliciously or sadistically cause Plaintiff harm under the Eighth Amendment.

However, Defendants may still be held liable under § 1983 as bystanders. This occurs when an officer may not be directly involved in the possible constitutional violation. See Lewis, 581 F.3d at 472. This actually seems to be the crux of Plaintiff's argument in his Response (#27) as to why the other officers besides Maskel should be liable under § 1983. Plaintiff himself seems to concede that merely restraining and throwing a prisoner to the ground is not violative of § 1983.[2] Plaintiff

---

[2]On Page 9 of his Response (#27), Plaintiff writes "Defendants' argument that merely throwing a prisoner to the ground is not violative of the Eighth Amendment prohibition against cruel and unusual punishment ignores the undisputed facts of this case. If all that had happened is that Henderson was put to the floor and handcuffed, there obviously could be no claim for cruel and unusual punishment. But the whole incident involved much more - being struck in the face without provocation, being restrained on the ground while a fellow officer jumped his knee against Henderson's jaws, breaking both sides and then being dragged out of the cell, down the hall and into an elevator is not justifiable under these circumstances."

appears to want to make the case for a direct excessive force violation of § 1983 on Defendants part, but his insistence that "these defendants were more than bystanders, they were active participants in beating up Henderson and dragging him away" does not hold up under the record. There is nothing in the record to suggest that Osterbur, Crawley, and Powell engaged in a preplanned concerted effort with Maskel to assault Plaintiff. Therefore, if the other three officers are to be held liable under § 1983, it must be as bystanders to Maskel's alleged constitutional violations.

Defendants can be held liable under § 1983 as bystanders if Plaintiff can show that (1) they had reason to know that a fellow officer (Maskel) was using excessive force and (2) had a realistic opportunity to intervene and prevent the act from occurring. Lewis, 581 F.3d at 472. The Seventh Circuit has held that "'[a]n official satisfies the personal responsibility requirement of § 1983 if she acts or *fails* to act with a deliberate or reckless disregard of the plaintiff's constitutional rights.'" Fillmore v. Page, 358 F.3d 496, 506 (7th Cir. 2004) (emphasis in original), quoting Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982). One important factor to take into account is how quickly the supposed unconstitutional activity occurred. See Lewis, 581 F.3d at 472 (officer found not liable under bystander rule when inmate was tasered because situation developed so quickly he did not have time to react and intervene). Here, the initial punching of Plaintiff by Maskel happened very quickly. The other officers had no forewarning that Maskel was going to strike Plaintiff, and thus had no realistic opportunity to intervene and prevent the act from occurring. While Maskel's landing his knee on Plaintiff's jaw is more problematic, as it occurred after Maskel had already punched Plaintiff in the face, the incident still does not impose liability under § 1983, as there is no evidence that Defendants failed to act with a reckless or deliberate disregard of Plaintiff's constitutional rights. Having viewed the videotape, and read the transcript testimony of Plaintiff and

Maskel attached as exhibits to the motions, the entire occurred very quickly over a short amount of time. The officers were involved in securing a struggling prisoner and making sure unrest did not spread to the rest of the inmates. Based on the totality of the circumstances, there is nothing in the record to indicate the officers acted with deliberate or reckless indifference in not intervening before Maskel came down on Plaintiff with his knee. Therefore, judgment is granted for Defendants Osterbur, Powell, and Crawley on Plaintiff's § 1983 claims.

<u>II. Assault and Battery Claims Against Defendants Powell, Osterbur, and Crawley</u>

Defendants Powell, Osterbur, and Crawley next argue that judgment should be granted for them on Plaintiff's state assault and battery claims because (1) nothing in the record supports a finding that they attempted to cause any harm to Plaintiff by their actions and (2) the Tort Immunity Act holds they are not liable for injury caused by the act or omission of another. Plaintiff contends that whether Defendants were entitled to employ the level of force they did is a question for the jury and the Tort Immunity Act is irrelevant, as he does not seek to hold any of the Defendants liable under the theory of vicarious liability. Rather, he seeks liability based on the acts committed by Defendants.

Under Illinois law, to establish a claim for battery, Plaintiff must prove that: (1) Defendants acted with intent to cause a harmful or offensive contact with Plaintiff, or to cause an imminent apprehension of such contact, and (2) a harmful contact with Plaintiff directly or indirectly resulted. <u>Blankenship v. Bridgestone Americas Holding, Inc.</u>, 467 F.Supp.2d 886, 894 (C.D. Ill. 2006), citing <u>Cohen v. Smith</u>, 648 N.E.2d 329, 332 (Ill. App. Ct. 1995). The tort of assault is defined as an intentional, unlawful offer of corporal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the present ability

effectuate the attempt if not prevented. Benitez v. American Standard Circuits, Inc., 678 F.Supp.2d 745, 767 (N.D. Ill. 2010), citing Parrish v. Donahue, 443 N.E.2d 786, 788 (Ill. App. Ct. 1982).

The Illinois Tort Immunity Act states that "Except as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." 745 Ill. Comp. Stat. 10/2-204 (West 2008). Plaintiff, however, asserts that he is not claiming Defendants were vicariously liable for the acts committed by Maskel, but rather for their own acts in wrestling him to the ground and dragging him to a holding cell. Therefore, there is no need to analyze the situation under the Tort Immunity Act.

Here, Defendants were, in the course of their duties as correctional offices, attempting to restrain Defendant. They were not in the midst of an unlawful act, and in Illinois, where the party inflicting the injury is not doing an unlawful act, the intent to harm is material. Walls v. Lombard Police Officers, 2002 WL 548675, at *2 (N.D. Ill. April 4, 2002), citing Glowacki v .Moldtronics, Inc., 636 N.E.2d 1138, 1140 (Ill. App. Ct. 1994). There is no evidence in the record that Osterbur, Crawley, or Powell intended to cause any harm to Plaintiff by their actions. Rather, they were acting in their capacity as correctional officers to restrain a struggling inmate.

Plaintiff argues that Defendants were all involved in holding Plaintiff while Maskel struck him and in taking him to the ground while Maskel came down on Plaintiff with his knee. This, Plaintiff claims, results in a question for the jury as to whether the force used by Defendants was that which a reasonable officer would use with the information available. However, there is no evidence in the record that Defendants (excluding Maskel) intended to harm Plaintiff through their actions. Instead, the video evidence, along with testimony from Plaintiff and Maskel, shows that Osterbur, Powell, and Crawley were attempting to restrain a struggling inmate. As stated above, there is no

evidence that Defendants knew what Maskel was going to do or conspired with Maskel to injure Plaintiff. There is no evidence of an intent to harm on Defendants' part. The court agrees with Defendants that the contention that Osterbur, Crawley, and Powell coordinated their actions with Maskel or intended to cause harm to Plaintiff is mere speculation on Plaintiff's part, and speculation does not defeat summary judgment. See McDonald v. Village of Winnetka, 371 F.3d 992, 1001 (7th Cir. 2004) ("[W]e are not required to draw every conceivable inference from the record. Inferences that are supported by only speculation or conjecture will not defeat a motion for summary judgment."). Therefore, judgment is granted on the assault and battery claims for Defendants Osterbur, Powell, and Crawley.

      III. <u>Defendant Hartshorn Sued in His Official Capacity as Sheriff under § 1983</u>

Defendant Hartshorn has been sued in his official capacity only, as he was not personally involved in the incident with Plaintiff and did not learn about it until sometime later. Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself, and a governmental unit is not liable under § 1983 unless the deprivation of constitutional rights is caused by its own policy or custom. Walker v. Sheahan, 526 F.3d 973, 977 (7th Cir. 2008). A local governmental unit's unconstitutional policy or custom can be shown by: (1) an express policy causing the loss when enforced; (2) a widespread practice constituting a "custom or usage" causing the loss; or (3) a person with final policymaking authority causing the loss. Walker, 526 F.3d at 977.

Plaintiff argues that just such an express policy existed, based on Hartshorn's deposition testimony that it was up to an individual officers discretion in how to deal with an inmate who was being disrespectful. Plaintiff claims that this "unfettered discretion" on the part of officers in dealing

with inmate disrespect "invites" the very "behavior" that occurred here, with Maskel striking Plaintiff.

However, as pointed out by Defendants, Plaintiff has somewhat manipulated Hartshorn's testimony regarding officer discretion in dealing with an inmate who has shown disrespect. Plaintiff has argued that the "unfettered" discretion caused the alleged constitutional deprivation of excessive force. However, the court agrees with Defendants that nothing in the record, either testified to by Hartshorn or Maskel, indicates that the discretion afforded an officer authorizes that officer to use excessive force. Rather, the evidence shows that it simply allows an officer dealing with the situation to handle it in manner which the officer feels best fits the circumstances of the incident. As testified to by Maskel, the usual practice when an inmate shows disrespect is to move or bring the inmate out of the housing unit to discuss the problem. Here, the incident occurred due to actions of the parties after the disrespect was shown and it cannot be said that the supposed constitutional deprivation occurred because of any express policy of the jail. There is also no evidence in the record of the discretion being granted to officers in dealing with inmate disrespect leading to other similar incidents involving excessive force. Judgment must be granted in favor of Defendant Hartshorn on this claim.

### IV. Civil Conspiracy Claim Against Defendants

Plaintiff alleges that Defendants engaged in a civil conspiracy against him when Powell, Crawley, Osterbur, and Maskel, in a common effort, participated in an unlawful act by using excessive force on Plaintiff.

In Illinois, civil conspiracy consists of a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by

unlawful means.  Adcock v. Brakegate, Ltd., 645 N.E.2d 888, 894 (Ill. 1994).  In order to state a claim for civil conspiracy, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement.  McClure v. Owens-Corning Fiberglas Corp., 720 N.E.2d 242, 258 (Ill. 1999).  A conspiracy is almost never susceptible to direct proof, but rather must be established from circumstantial evidence and inferences drawn from evidence, coupled with common-sense knowledge of the behavior of persons in similar circumstances.  McClure, 720 N.E.2d at 258.  If a civil conspiracy is shown by circumstantial evidence, however, that evidence must be clear and convincing.  McClure, 720 N.E.2d at 258.

   The parties spend time in their filings debating whether a civil conspiracy claim is foreclosed by the general rule that under Illinois law, individuals working for the same corporation cannot conspire with each other and whether exceptions to that rule apply.  However, the court need not address those issues because the civil conspiracy claim on its own, under the evidence adduced in this case, fails to survive summary judgment.  There simply is no evidence in the record establishing or even suggesting an agreement among Defendants to violate Plaintiff's constitutional rights.  The court is mindful that conspiracy is rarely proved by direct evidence, but Plaintiff has not shown clear and convincing circumstantial evidence of a conspiracy.  See McClure, 720 N.E.2d at 258.  All Plaintiff puts forward for proof of conspiracy is the entering of all four officers into the cell at one time.  He puts forward no direct evidence that Powell, Osterbur, and Crawley engaged in a conspiracy with Maskel to injure him.  The evidence that they all four entered the cell at one time may be stretched to be called "circumstantial" evidence of a common effort, but it is hardly clear and convincing and amounts, in the end, to speculation on the Plaintiff's part as to the existence of a conspiracy.  Therefore, judgment shall be granted to Defendants Powell, Osterbur, and Crawley

-14-

on the civil conspiracy claim.

V. Plaintiff's Malicious Prosecution Claim

Under Illinois law, in order to establish a claim of malicious prosecution, a Plaintiff must show: (1) the commencement or continuation of a criminal proceeding by Defendants; (2) termination of the proceeding in his favor; (3) the absence of probable cause for the proceeding; (4) the presence of malice on Defendants' part; and (5) damages. Ross v. Mauro Chevrolet, 861 N.E.2d 313, 319 (Ill. App. Ct. 2006). It is undisputed that Plaintiff was convicted of aggravated battery for biting Defendant Maskel in the incident out of which this litigation arises. However, the case remains pending in the state circuit court on Plaintiff's motion to reconsider sentence. The parties, thus, are in dispute about whether Plaintiff's claim fails due to his inability to satisfy the "termination of the proceeding in his favor" prong. The court notes that at a status conference on December 16, 2010, the parties discussed whether Defendants could use proof of Plaintiff's aggravated battery conviction at trial. Plaintiff claims that it could not be used before the merits were resolved by the Fourth District Appellate Court. The court instructed the parties to brief the issue. As there will undoubtedly be overlap between the malicious prosecution issue and the ability to use of proof of Plaintiff's conviction at trial, the court defers ruling on the merits of this claim until the parties brief the conviction-at-trial issue.

IT IS THEREFORE ORDERED:

(1) Defendants' Motion for Summary Judgment (#23) is GRANTED in part and DENIED in part.

(2) Summary judgment is GRANTED as to Defendants Osterbur, Crawley, Powell, and Hartshorn on Plaintiff's § 1983 claims. It is also GRANTED to Defendants Osterbur, Crawley,

Powell and Hartshorn on Plaintiff's state law assault and battery. It is GRANTED as to ALL Defendants on the state law civil conspiracy claim.

(3) The motion is DENIED, as of now, as to Plaintiff's state law malicious prosecution claim. The parties shall address this issue again in their filings concerning use of Plaintiff's state court conviction at trial.

(4) This case remains set for a telephone status conference before this court on March 16, 2011, at 11:30 am.

ENTERED this 4th day of January, 2011.

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE